# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT A. VON VILLAS,<br><br>Plaintiff,<br><br>v.<br><br>PALLARES, et al.,<br><br>Defendants. | Case No. **1:13-cv-01869-LJO-JLT (PC)**<br><br>**ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE**<br><br>**(Doc. 1)**<br><br>**RESPONSE DUE WITHIN 30 DAYS** |

**I.  Background**

Plaintiff, Robert A. Von Villas, is a state prisoner who is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on November 18, 2013. (Doc. 1.)

    **A.  Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

///

1

**B.     Summary of Plaintiff's Complaint**

Plaintiff complains of acts that occurred while he was an inmate at the California Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, California.  Plaintiff names Lieutenants M. Pallares, and T. Akin, Sergeant S. Heberling, and Correctional Officer S. McAfee as Defendants.  Plaintiff seeks monetary, declaratory, and injunctive relief.

Plaintiff alleges that as a result of his filing administrative grievances ("602") regarding the handling of his and his cellmate's mail, Sgt. Heberling charged him with a rules violation of which he was found guilty and subsequently submitted a letter to internal affairs (a copy of which was submitted to Lt. Akin) and a 602 regarding Sgt. Heberling's retaliation via the false report. (Doc. 1, Compl., at ¶¶ 8-17.)  Subsequently, an anonymous note was turned in which stated that Plaintiff was in danger.  (*Id.*, at ¶18.)  As a result, Sgt. Heberling strongly suggested that Plaintiff consider transferring to another yard, but both Plaintiff and his roommate refused as they had no safety concerns.  (*Id.*, at ¶ 19.)

On May 15, 2011, the cell that Plaintiff and his cellmate were in was searched for a contraband cell phone, which was not found, and their possessions and beds were left in a ransacked state.  (*Id.*, at ¶ 20.)  Sgt. Heberling later told the investigating officer that Plaintiff became very agitated and boisterous when his cell was being searched, but it was Plaintiff's cellmate who had become agitated and Plaintiff had to calm him down.  (*Id.*, at ¶¶ 20, 26.)

Two days later, on May 17, 2011, a box of candy bars appeared by their cell door with a note from an unidentifiable inmate requesting Plaintiff to trade for ten cans of soup.  (*Id.*, at ¶ 21.) Neither Plaintiff nor his cellmate wanted the candy bars, so attempted to identify who it was from so that it might be returned, but the inmate porter did not recognize the handwriting and the signature was unidentifiable such that Plaintiff's cellmate placed the box of candy bars on the top of his locker to be returned when the unidentifiable inmate made further inquiry.  (*Id.*, at ¶¶ 22, 23.)  On May 19, 2011, Plaintiff was taken into custody on the basis of an anonymous kite that stated Plaintiff had paid his cellmate to attack Sgt. Heberling, Plaintiff told the investigating officer that there was a box of candy bars on the top of his cellmate's locker that wasn't theirs and they were waiting to return to its owner once identified.  (*Id.*, at ¶ 24.)  The investigating officer

interviewed the inmate porter and confirmed this. (*Id*.) Plaintiff was placed in Administrative Segregation ("Ad Seg"). (*Id*.) A weapon was found secreted in one of the candy bars on the top of Plaintiff's cellmate's locker and Plaintiff was issued an RVR for possession of a weapon. (*Id.*, at ¶¶ 27-28.)

The officer assigned to investigate this incident told Plaintiff that he was too busy to interview Plaintiff's witnesses, but Lt. Akin denied Plaintiff's request for a new investigating officer. (*Id.*, at ¶ 30.) Lt. Akin likewise denied Plaintiff's request for a copy of the anonymous note used against him. (*Id.*, at ¶ 31.) Lt. Akin denied all of Plaintiff's witnesses, did not include Plaintiff's written statement in his disposition other than to indicate that it was attached (but later was lost), denied all of Plaintiff's witnesses and/or evidence which showed he had been set up, and found Plaintiff guilty of possession of a weapon without establishing that Plaintiff even had knowledge of the weapon, let alone possession of it (the candy bars were found negative of Plaintiff's prints). (*Id.*, at ¶ 32.)

On August 4, 2011, the ICC gave Plaintiff a ten month term in the SHU which they suspended due to Plaintiff's documented 21 year disciplinary free record, resulting in Plaintiff being returned to his regular housing facility "D." (*Id.*, at ¶ 35.)

On August 8, 2011, Plaintiff received his final copy of the hearing regarding the charge of possession of a weapon and he filed a 602 challenging the finding of guilty by Lt. Akin. (*Id.*, at ¶ 37.)

On August 11, 2011, Plaintiff was placed in Ad Seg for the original charge of staff safety which Plaintiff's original opposition to was previously deemed "not relevant." (*Id.*, at ¶ 39.) Seven days later, ICC rescinded their August 4, 2011 order suspension of the ten month SHU term. (*Id.*, at ¶ 40.)

Plaintiff requested to present witnesses and evidence at his I.E. hearing and was granted a written copy of the "wording" used in the anonymous kite which indicated he intended harm to Sgt. Heberling which showed that Plaintiff's cellmate had the alleged knife and did not show that Plaintiff had any knowledge of a weapon being hidden in the box of candy bars. (*Id.*, at ¶¶ 51, 52, 53.) The I.E. officer denied Plaintiff's requests for response to various questions as "not

relevant" or "redundant" which denied the fact finder of making that determination and of the information contained therein. (*Id.*, at ¶ 54.)

On October 28, 2011, Lt. Pallares convened Plaintiff's reissue/rehearing and denied Plaintiff's requests to present evidence showing he was set up; let the I.E. officer decide what was relevant or redundant; failed to document that no investigation was conducted regarding the incident other than the cell search and anonymous note; failed to show that the anonymous note implicating Plaintiff was not investigated; did not allow Plaintiff to even discuss the contents of the anonymous note (which had already been disclosed to Plaintiff); and did not include any of the evidence that the fingerprint testing had come back negative, any of the exculpatory statements from witnesses including the inmate porter, or the original investigating officer -- Lt. Pallares then found Plaintiff guilty. (*Id.*, at ¶ 55.) Plaintiff discovered in January of 2012 that his written statement that he gave to Lt. Akin was not part of the record or considered by Lt. Pallares. (*Id.*, at ¶ 60.)

C/O McAfee was the officer who removed and inventoried the property of Plaintiff and his cell from their cell when Plaintiff was placed in Ad Seg. and when she brought the inventory form to Plaintiff for his signature, she indicated that she had comingled Plaintiff's and his cellmate's property, but that she would take care of items that Plaintiff noticed were missing from the list of inventory of his property. (*Id.*, at ¶ 25.) C/O McAfee disposed of Plaintiff's 602 for not being allowed to separate his property from that of his cellmate in response to Plaintiff's alleged threat against Sgt. Heberling. (*Id.*, at ¶ 29.)

On June 30, 2011, C/O McAfee brought Plaintiff several items of his personal property and indicated that Plaintiff's cellmate had gone through his items (which Plaintiff was not allowed to be present for) and said these things belonged to Plaintiff. (*Id.*, at ¶ 33.) Plaintiff filed another 602 to gain access to his and his cellmate's comingled property which C/O McAfee responded to with a lie and said Plaintiff's items had been loaned out or mixed and not recovered and/or did not respond to Plaintiff's request for an interview which Plaintiff feels was in retaliation for Plaintiff's staff complaint against Sgt. Heberling. (*Id.*, at ¶ 34.)

Around August 9, 2011, Plaintiff confronted C/O Akin about his missing property in

response to which C/O Akin Plaintiff's missing tennis shoes and offered to give Plaintiff another inmate's hot pot which had not been claimed, which Plaintiff refused -- wanting his own hot pot returned. (*Id.*, at ¶ 38.) Plaintiff variously makes further allegations regarding his efforts to obtain his missing property from C/O McAfee. (*Id.*, at ¶¶ 45, 48, 52, 58, 59.)

As a result of all of this, Plaintiff spent nearly ten months in the SHU, was transferred to a higher security "180" level prison, lost his Medium "A" custody status, lost his 1989 priority effective work date, and his twenty year clean prison record was destroyed, and he developed an anxiety disorder.[1]  (*Id.*, at ¶¶ 42, 44, 46, 56, 63.)

Plaintiff alleges that, by these actions: (1) Sgt. Heberling violated the First and Fourteenth Amendments, various sections of Title 15 of the California Code of Regulations, "Reprisal; State Tort, Intentional," and 28 U.S.C. §2254 (*see id.*, at pp. 19-20); (2) Lt. Akin violated the Fourteenth Amendment, his rights to due process, various sections of Title 15 of the California Code of Regulations and the California Penal Code, and 28 U.S.C. §2254 (*see id.*, at pp. 21-22);; (3) Lt. Pallares violated the Fourteenth Amendment, his rights to due process, various sections of Title 15 of the California Code of Regulations and the California Penal Code "Cal Tort - Intentional," and 28 U.S.C. § 2254 (*see id.*, at pp. 23-25); and (4) C/O McAfee violated the First Amendment, his liberty interests, "Negligent & Intentional State Tort," various sections of the California Government Code, of Title 15 of the California Code of Regulations, the California Penal Code, "Bailment Contract," and 28 U.S.C. §2254 (*see id.*, at pp. 26-27).

Plaintiff has stated one cognizable claim, but may be able to amend to correct deficiencies so as to make additional claims cognizable. Thus, he is being given the applicable standards based on his stated claims and opportunity to either proceed on the claims found cognizable herein or to file a first amended complaint.

### C.     Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

---

[1] Plaintiff also alleges that he lost "360 days good time" (Doc. 1, Compl., ¶ 63), but he no longer seeks relief of reinstatement of these days. (*See* Docs. 7-9.)

5

exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557. While "plaintiffs [now] face a higher burden of pleadings facts . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, courts are not required to indulge unwarranted inferences. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

  If he chooses to file a first amended complaint, Plaintiff should endeavor to make it as

concise as possible. He is encouraged to refrain from presenting his claims via a chronological rendition of events; rather Plaintiff should merely state which of his constitutional rights he feels were violated by each Defendant and its factual basis and he must do so in **no more than twenty (20) pages**. If Plaintiff fails to comply with the twenty (20) page limitation, this action will be subject to dismissal as violating Rule 8(a), and may be counted as a strike for failure to state a claim under 28 U.S.C. § 1915(g) so as to bar him from filing in forma pauperis in the future.

### 2. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff has linked each of the four Defendants he has named in this action to some of his factual allegations. However, if Plaintiff chooses to file a first amended complaint, he is reminded that he must clearly state which Defendant(s) he feels are responsible for each violation of his constitutional rights and their factual basis as he must put each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

### 3. Federal Rule of Civil Procedure 18(a)

Fed.R.Civ.P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) citing 28 U.S.C. § 1915(g).

Further, claims premised on the same type of constitutional violation(s) (i.e. retaliation or excessive force) against multiple defendants does not make them factually related.  Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event.  Plaintiff is advised that if he chooses to file a first amended complaint, and fails to comply with Rule 18(a), all unrelated claims will be stricken.

### D.    Claims for Relief

#### 1. First Amendment -- Retaliation

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.  *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009).  A retaliation claim has five elements.  *Id.* at 1114.

First, the plaintiff must allege that the retaliated-against conduct is protected.  *Id.*  The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  Second, the plaintiff must show the defendant took adverse action against the plaintiff.  *Rhodes*, at 567.  Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct.  *Waitson*, 668

F.3d at 1114. Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).  Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

It bears repeating that while Plaintiff need only allege facts sufficient to support a plausible claim for relief, the mere possibility of misconduct is not sufficient, *Iqbal*, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The conduct identified by Plaintiff as retaliatory must have been motivated *by* his engaging in a protected activity, and the conduct must *not* have reasonably advanced a legitimate penological goal.  *Brodheim*, 584 F.3d at 1271-72 (citations omitted).  Thus, mere allegations that Plaintiff engaged in protected activity, without knowledge resulting in animus by a Defendant, is insufficient to show that Plaintiff's protected activity was the motivating factor behind a Defendant's actions.

As to Sgt. Heberling, Plaintiff alleges that, based on Plaintiff's precipitating 602s regarding the handling of his and his cellmate's mail and a staff complaint which Plaintiff filed against Sgt. Heberling, she attempted to get Plaintiff to transfer to another yard via an anonymous note supposedly suggesting Plaintiff and his cellmate were in danger and that she had their cell searched (and ransacked) by two correctional officers under the guise of looking for a cell phone, a call from which was detected originating from an area that Plaintiff doesn't have access to.  This states a cognizable retaliation claim against Sgt. Heberling.

As to Lt. Pallares, Lt. Akin, and C/O McAfee, while Plaintiff alleges that each of them engaged in acts towards him that would chill or silence an ordinary person from future protected activities, Plaintiff fails to state allegations to show that their actions were precipitated by his having filed 602s or the staff complaint, or that they even had knowledge of his protected activities.  Thus, Plaintiff fails to state a cognizable retaliation claim against Lt. Pallares, Lt. Akin, and/or C/O McAfee.

**2. Fourteenth Amendment -- Due Process**

**a. Disciplinary Hearings**

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563-71. Confrontation and cross examination are not generally required. *Id.* at 567. As long as the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life

which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985); *see also Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996); *Koenig*, 971 F.2d at 423; *Zimmerlee v. Keeney*, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." *Hill*, 472 U.S. at 455; *see also Touissaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1991); *Bostic v. Carlson*, 884 F.2d 1267, 1269-70 (9th Cir. 1989); *Jancsek, III v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987); *see especially Burnsworth v. Gunderson*, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.) The relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached . . . " as "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill* at 455-57 (emphasis added).

Plaintiff did not state any facts to address any of the requirements set forth in *Wolff*. Plaintiff has alleged that he was arbitrarily denied the witnesses he requested and was not allowed to present evidence of being set-up, but this alone would be insufficient to support a claim of denial of procedural due process. Further, Plaintiff fails to show any evidence that his liberty interests were violated by his placement in the SHU. Finally, while Plaintiff might have thought that being transferred to a higher security institution would suffice to show a violation of his liberty interests, he has not shown a change in his housing conditions either during his placement in the SHU or upon transfer to another facility which might amount to violating his liberty interest. However, Plaintiff is advised that prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976).

Thus, Plaintiff fails to state a cognizable claim for violation of his due process rights against any of the defendants in this action.

/ / /

/ /

**b. Inmate Appeals -- 602s**

Plaintiff appears to grieve the processing, and reviewing of his 602 inmate appeals by Lt. Akin and/or C/O McAfee related to obtaining his property which was missing from the inventory list when he was moved to the SHU.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987,

992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and is unable to state a cognizable claim against Lt. Akin and/or C/O McAfee for the processing and/or reviewing of his 602 inmate appeals.

To the extent that Plaintiff included the allegations regarding the handling of his inmate appeals in an attempt to show exhaustion of his administrative remedies, he is advised that failure to exhaust is an affirmative defense, to be raised by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007). It appears to the Court that, aside from attempting to state a claim for the handling of his inmate appeals – which is not cognizable, Plaintiff might have included his allegations relating to the processing and handling of 602s to show that his efforts to exhaust administrative remedies were thwarted in anticipation of a defense. However, a complaint is not the proper vehicle for such arguments, but rather must merely state allegations to show that a plaintiff exhausted his available administrative remedies. Arguments pertaining to the availability (or unavailability) of administrative remedies are most properly vetted when the exhaustion defense is raised via a motion to dismiss. Fed. R. Civ. Pro. 12(b).

### c. Substantive Due Process -- Property

Plaintiff complains that C/O McAfee did not return all of Plaintiff's property after he was moved to the SHU. The Due Process Clause protects prisoners from being deprived of property without due process of law, *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, *see Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available," *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

California law provides an adequate post-deprivation remedy for any property

deprivations. *Barnett v. Centoni*, 31 F.3d 813, 816-817 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895).

Since C/O McAfee's involvement in the failure to return Plaintiff's property was not authorized, whether intentional or negligent, he has no cause of action under 42 U.S.C. § 1983 as a meaningful state post-deprivation remedy for his loss is available. *Hudson*, 468 U.S. at 533.

### 3. California Law

#### a. Supplemental Jurisdiction

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary." *Acri v. Varian Assoc., Inc*., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).

#### b. California Tort Claims Act

The California Tort Claims Act ("CTCA") sets forth in California Government Code sections 810 et seq., requires that a plaintiff may not bring a suit for monetary damages against a public employee or entity unless the plaintiff first presented the claim to the California Victim Compensation and Government Claims Board ("VCGCB" or "Board"), and the Board acted on the claim, or the time for doing so expired. "The Tort Claims Act requires that any civil complaint for money or damages first be presented to and rejected by the pertinent public entity." *Munoz v. California*, 33 Cal.App.4th 1767, 1776, 39 Cal.Rptr.2d 860 (1995). The purpose of this requirement is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation." *City of*

*San Jose v. Superior Court*, 12 Cal.3d 447, 455, 115 Cal.Rptr. 797, 525 P.2d 701 (1974) (citations omitted). Compliance with this "claim presentation requirement" constitutes an element of a cause of action for damages against a public entity or official. *State v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1244, 13 Cal.Rptr.3d 534, 90 P.3d 116 (2004). Thus, in the state courts, "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." *Id*. at 1239, 13 Cal.Rptr.3d 534, 90 P.3d 116 (fn.omitted).

Federal courts likewise must require compliance with the CTCA for pendant state law claims that seek damages against state public employees or entities. *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir.1969); *Mangold v. California Public Utilities Commission*, 67 F.3d 1470, 1477 (9th Cir.1995). State tort claims included in a federal action, filed pursuant to 42 U.S.C. § 1983, may proceed only if the claims were first presented to the state in compliance with the claim presentation requirement. *Karim–Panahi v. Los Angeles Police Department*, 839 F.2d 621, 627 (9th Cir.1988); *Butler v. Los Angeles County*, 617 F.Supp.2d 994, 1001 (C.D.Cal.2008).

Plaintiff has failed to state any allegations to show he complied with the CTCA. However, he may have done so, in which case he would not necessarily be barred from pursuing his claims under California law. Thus, his claims under state law are subsequently discussed in the event Plaintiff has complied with the CTCA and desires to pursue them herein.

### c. Negligence[2]

A public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d) (West 2009). "Under California law, '[t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct

---

[2] Plaintiff also states "Intentional" in the headers of his claims in this action. However, just "intentional" is not actionable. Perhaps Plaintiff intended to state that the Defendants actions that he feels violated his rights were both negligent and intentional, but whether a given Defendant acted negligently or intentionally is only an issue under federal law if required by standards for each individual federal claim that Plaintiff is attempting to state.

15

and resulting injuries (proximate cause); and (4) actual loss (damages).'" *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (quoting *McGarry v. Sax*, 158 Cal.App.4th 983, 994, 70 Cal.Rptr.3d 519 (2008) (internal quotations omitted)).

Plaintiff has not stated any allegations to address these elements against any of the named Defendants in this action.

### d. California Statutes

#### i. California Codes of Regulation (Title 15)

Plaintiff alleges violations of various sections of Title 15 of the California Code of Regulations. The existence of regulations such as these governing the conduct of prison employees does not necessarily entitle Plaintiff to sue civilly to enforce the regulations or to sue for damages based on the violation of the regulations. The Court has found no authority to support a finding that there is an implied private right of action under Title 15 and Plaintiff has provided none. Given that the statutory language does not support an inference that there is a private right of action, the Court finds that Plaintiff is unable to state any cognizable claims upon which relief may be granted based on the violation of Title 15 regulations. All such claims are properly dismissed.

#### ii. California Government Code § 844.6(d)

As previously stated, a public employee is liable for injury to a prisoner "proximately caused by his negligent or wrongful act or omission." Cal. Gov't Code § 844.6(d) (West 2009). This section does not provide a cause of action in and of itself; rather, it states that a public employee is liable for damages caused by their acts which amount to a legal cause of action or cognizable claim. Thus, Plaintiff fails and is unable to state a cognizable claim for violation of this code section.

#### iii. California Penal Code

A private right of action under a criminal statute has rarely been implied. *Chrysler Corp. v. Brown,* 441 U.S. 281, 316 (1979). Where a private right of action has been implied, "'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'" *Chrysler Corp.*, 441 U.S. at 316 (quoting *Cort v. Ash*, 422 U.S. 66, 79 (1975)). The

Court has reviewed Penal Code sections 115 and 118.1. Both of these sections make certain actions by peace officers punishable by imprisonment for a term of years. There is no indication that civil enforcement of any kind is available to Plaintiff. *Cort*, 422 U.S. at 79-80; *Keaukaha-Panaewa Cmty. Ass'n v. Hawaiian Homes Comm'n*, 739 F.2d 1467, 1469-70 (9th Cir. 1984). Accordingly, Plaintiff fails and is unable to state a claim upon which relief may be granted under state law based on the alleged violations of sections 115 and 1181.

### 4. Supervisory Liability

To the extent that Plaintiff might feel a defendant is liable for the acts of persons under their supervision, he is reminded that supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, 556 U.S. at 677. "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer." *Id.* Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct. *Id.*

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth." *Moss*,

17

1  572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)). "Such
2  allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather
3  because they do nothing more than state a legal conclusion – even if that conclusion is cast in the
4  form of a factual allegation." *Id.*

5  Thus, any allegation that one defendant violated his rights and that another defendant is
6  somehow liable because they are under his supervision does not state a cognizable claim against
7  the defendant in a supervisory position.

## II.     CONCLUSION

Plaintiff has stated one cognizable claim for retaliation against Sgt. Heberling. However, since he may be able to amend his pleading to cure some of the defects in his pleading, he is being given the option, within thirty days to choose either to proceed on the cognizable claims which he has stated (as noted herein), or leave to file a first amended complaint. If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in any first amended complaint how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980). The first amended complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint should be brief. Fed. R. Civ. P. 8(a). Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v.*

*Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Within 30 days from the date of service of this order, Plaintiff must either:
   a. File a first amended complaint curing the deficiencies identified by the Court in this order, or
   b. Notify the Court in writing that he does not wish to file a first amended complaint and wishes to proceed only on the claim identified by the Court as viable/cognizable in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **August 7, 2014**                              **/s/ Jennifer L. Thurston**
                                                     UNITED STATES MAGISTRATE JUDGE